# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

GREGORY G. HOLSEY, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-16-42-SPS
 )
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
 )
        Defendant. )

## OPINION AND ORDER

The claimant Gregory G. Holsey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born November 7, 1973, and was forty-one years old at the time of the most recent administrative hearing (Tr. 112, 408). He completed a GED in 1996, and has previously worked as a delivery route driver, pizza delivery driver, dish washer, prep cook, and animal caretaker (though not all jobs were performed at the SGA level) (Tr. 148, 367). The claimant alleges inability to work since August 5, 2007, due to depression, ADD, social anxiety, and alcoholism (Tr. 144).

### Procedural History

On September 29, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ David W. Engel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 20, 2011 (Tr. 13-27), but the Northern District of Oklahoma reversed in Case No. CIV-13-142-GKF-PJC, and remanded with further instructions (Tr. 462-481). On remand, ALJ Engel conducted a second administrative hearing and again determined the claimant was not disabled in a written opinion date August 17, 2015. The Appeals Council again denied review, so ALJ Engel's 2015 written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a range of medium, light, or sedentary exertion work, but that he was unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. Additionally, he found that the claimant could understand, remember, and carry out simple instructions only in a work-related setting; he could interact with co-workers and supervisors under routine supervision; and he could interact occasionally with the general public, whether in person or over the phone (Tr. 260). The ALJ further stated that the claimant was afflicted with symptoms from a variety of sources to include depression, learning disorder, and anxiety, which were of sufficient severity to be noticeable to him at all times, but that the claimant was nevertheless able to remain attentive and responsive in a work setting, and that he would be able to perform work assignments within the above-cited limitations (Tr. 360). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hand packager, housekeeper, and document preparer (Tr. 367-369).

## Review

The claimant contends that the ALJ erred by: (i) by failing to properly consider the medical evidence, including a consultative examiner's opinion and the state reviewing physician opinions, and (ii) by ignoring a number of impairments and limitations related to his mental impairments. Because the ALJ does appear to have ignored probative

evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of organic mental disorder, anxiety, and depression (Tr. 358). The mental health evidence in the record indicates that the claimant was treated by Dr. Troy Goldberg, M.D. from part of 2008 to the first half of 2009, who managed his medications at this time (Tr. 220-227). It appears that Dr. Goldberg assessed the claimant with social anxiety disorder, and treatment notes reflect that the claimant reported moods ranging from "ok" to "down," and that he had low motivation (Tr. Tr. 220-227). He reported being sober during this time, but having a history of alcohol abuse (Tr. 220-227).

In 2010, the claimant received mental health treatment from Family and Children's Services. On April 2, 2010, he was noted to have fair hygiene, with untrimmed facial hair, intermittent eye contact, and normal speech (Tr. 265). He displayed depressive symptoms, and reported current suicidal ideation (Tr. 265). Upon completing the assessment, the assessor stated that the claimant was in need of mental health services, medication management, and case management, and that the prognosis was "fair to good with client participation" (Tr. 266). The claimant was assessed with major depressive disorder, recurrent, severe, without mention of psychotic behavior, as well as alcohol dependence; sedative, hypnotic or anxiolytic abuse, unspecified; and ADHD (Tr. 267). He was noted to have severe economic problems and severe problems relating to social environment, along with moderate problems with obtaining health care services, education/occupation, and with primary support group (Tr. 268).

Records from the claimant's childhood indicate that, *inter alia*, the claimant struggled from early childhood with attention, cooperation, and self control, even though he was also noted to be bright and tested with an average IQ (Tr. 294-318). Additionally, he was placed on an IEP in 1981 for a behavioral disorder (Tr. 306-309). In 1985, the claimant was evaluated and found to need two interventions: (i) therapy to deal with his feelings of self worth, and (ii) a change of school to provide a positive but structured environment (Tr. 316). The claimant was in fact placed in a special school to address and accommodate his needs (Tr. 317-318). Following his placement in a more structured school environment, the claimant was also referred for a stimulant medication, which was prescribed following a finding that the claimant could only function with a combination of stimulant medication and a highly structured educational environment (Tr. 320).

On February 17, 2010, Dennis A. Rawlings, Ph.D. conducted a mental status examination of the claimant (Tr. 233). Dr. Rawlings noted the claimant's hygiene appeared good, but that he had an almost haunted quality to his appearance, and that his eye contact was mostly avoidant and downcast, although he had good cooperation (Tr. 233). Upon taking a history and conducting some testing, Dr. Rawlings observed that while the claimant did not meet the criteria for PTSD, he looked "like he may have experienced very severe early developmental trauma affecting his ability to function" (Tr. 235). He indicated the claimant's thought processes were normal, that the claimant had social phobia with onset in early grade school years that was still a problem, that he had most of the symptoms of Generalized Anxiety Disorder, and that suicidal ideation was reported to occur on a regular basis (Tr. 237-238). The claimant's affective

expression was "almost completely flattened," and the mood was described as "irritable and anxious with profound feelings of helplessness, hopelessness, worthlessness, and cynicism" (Tr. 238). He assessed the claimant with social phobia with panic attacks, generalized anxiety disorder, alcohol dependence in remission, and active cannabis dependence, as well as borderline personality disorder with avoidance personality features and dependent personality traits (Tr. 238-239). Dr. Rawlings gave the claimant a fair to guarded prognosis with treatment and sobriety (Tr. 239).

On March 24, 2010, state reviewing physician Don B. Johnson, Ph.D., reviewed the claimant's records and determined that he had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace, but that there was insufficient evidence regarding episodes of decompensation (Tr. 252). He summarized much of the medical evidence, including Dr. Rawlings's assessment, but provided no commentary or analysis (Tr. 254). He then completed a mental RFC assessment in which he found the claimant markedly limited in the three typical categories of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 256-257). Dr. Johnson then stated that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation (Tr. 258).

On July 27, 2010, Dorothy Millican-Wynn, Ph.D., also reviewed the record, and made nearly identical findings (Tr. 284, 288-290). After summarizing the evidence, she did provide an "analysis," stating in its entirety, "Simple work, no public" (Tr. 286).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the medical evidence in the record. As to Dr. Rawlings's opinion, the ALJ summarized his mental status examination report in some detail, underlining every reference to substance use and/or abuse in the ALJ's opinion, and reciting Dr. Rawlings's recommendations (Tr. 364-365). The ALJ made no analysis of this opinion. (Tr. 365-367). He then turned to the reviewing opinions provided by Dr. Johnson and Dr. Millican-Wynn (Tr. 365-366). He assigned Dr. Johnson's opinion little weight because the ALJ found that the evidence indicated the claimant could interact with the general public on an occasional basis such that a limitation of "no interaction" was inconsistent with the record (Tr. 365). He then similarly summarized Dr. Millican-Wynn's assessment, and found that the limitation to no interaction with the public was unwarranted for the same reasons as set forth regarding Dr. Johnson's opinion (Tr. 365-366). The ALJ then noted the claimant's childhood records regarding cooperation, attention, and concentration, but found there was no evidence for antisocial behaviors or a significant personality disorder, and further decided that the claimant's primary problem was motivation because he did not appear motivated to work or obtain treatment or a medication regimen (Tr. 366-367). He found that the claimant's part-time work history indicated that he was "capable of performing work activity when he sets his mind to it" (Tr. 367). The ALJ also noted nearly every reference in the record to the claimant's

history of substance abuse, but made no findings as to how that affected the claimant's RFC.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Rawlings's consultative examination, but failed to conduct the proper analysis and did not specify how the exam did or did not support the assigned RFC. This was important to do because Dr. Rawlings specifically pointed out concerns related to the claimant's ability to perform in a work setting (which tended to support, at least, the findings related to contact with the general public). *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ

is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Nor did the ALJ provide any such explanation for why he ignored this opinion. Instead, he adopted the reviewing physician's reports (with the exception of the finding related to contact with the general public), which ignored the most concerning part of Dr. Rawlings's assessment related to the likelihood of significant developmental trauma affecting his overall functioning and distorting his personality, a direct contradiction to the ALJ's assumption that the claimant merely lacked motivation (Tr. 238, 367).

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**